IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WITRICITY CORPORATION**<br>**Plaintiff,**<br>v.<br>**INDUCTEV, INC. (f/k/a MOMENTUM DYNAMICS CORPORATION)**<br>**Defendant.** | CIVIL ACTION NO. 23-1099 |

**MEMORANDUM OPINION**

Rufe, J.                                                                                                         March 28, 2024

Plaintiff WiTricity Corporation alleges that Defendant InductEV, Inc. has infringed four of Plaintiff's patents involving technology for the wireless charging of electric vehicles. Defendant has filed a motion to transfer the case to the District of Delaware. For the reasons stated below, Defendant's motion to transfer will be granted.

**I.      BACKGROUND**

Plaintiff WiTricity Corporation ("WiTricity") was founded in 2007 based on new technology for wireless electricity transfer.[1] WiTricity is incorporated in Delaware, with a principal place of business in Massachusetts.[2] Its technology was invented and initially patented by physicists at the Massachusetts Institute of Technology ("MIT") and is known as "highly resonant wireless power transfer," which enables transfer of power from one device to another at high efficiency and over a distance.[3] This technology provides the foundation for resonant-based systems which wirelessly charge electric vehicles.[4]

---

[1] Compl. ¶ 12 [Doc. No. 1].

[2] *Id.* ¶ 1.

[3] *Id.* ¶ 12.

[4] *Id.*

Defendant InductEV, Inc. ("InductEV"), formerly known as Momentum Dynamics Corporation, is a Delaware corporation with a principal place of business in King of Prussia, Pennsylvania.[5] InductEV develops wireless charging systems for automotive and transportation industries.[6] According to the Complaint, InductEV has government contracts throughout the country "to install their infringing wireless inductive charging systems," such as "200kW bus ground side transmitters, 200kW vehicle on-board charging receivers, vehicle adjunctive equipment (e.g., LCD panels and alignment indicators, etc.), and power electronics panels . . . ."[7]

The Court provides a summary of litigation involving these parties in a different federal district, as relevant to InductEV's present motion to transfer. On December 9, 2020, WiTricity and MIT filed a lawsuit against InductEV (then operating under the Momentum Dynamics name) in the District of Delaware, alleging the infringement of seven patents.[8] Those patents do not overlap with the patents at issue in this case but are technologically similar, in that all relate to the use of highly resonant wireless power transfer through magnetic coupling.[9]

On September 27, 2021, the Honorable Mitchell S. Goldberg, sitting by designation, granted in part InductEV's partial motion to dismiss two of the seven patents raised in the Complaint.[10] Judge Goldberg held that one of the patents was ineligibile for patent protection, but permitted claims as to the other patent to proceed.[11] On the same date, Judge Goldberg

---

[5] *Id.* ¶ 2.

[6] *Id.*

[7] *Id.* ¶ 14.

[8] *WiTricity Corp. v. Momentum Dynamics Corp.*, No. 20-1671 (D. Del.) (Goldberg, J.) [hereinafter *WiTricity I*].

[9] *See generally WiTricity I*, 563 F. Supp. 3d 309, 313 (D. Del. 2021).

[10] *Id.* at 329 (dismissing claims as to '701 Patent and denying dismissal as to '595 Patent).

[11] *Id.*

stayed the case pending petitions that InductEV filed with the Patent Trial and Appeal Board ("PTAB") for *inter partes* review ("IPR") as to the five other patents not addressed in the motion to dismiss proceedings.[12] Over the following months, the PTAB issued decisions agreeing to institute IPR proceedings for four of those patents.[13] On February 15, 2022, WiTricity voluntarily dismissed from the District of Delaware case all claims arising from those four patents.[14]

On March 10, 2023, the PTAB issued a final written decision on the remaining patent (the '734 Patent), finding that it was "unpatentable based on obviousness."[15] On March 14, 2023, Judge Goldberg agreed to continue the stay of the case, by agreement of the parties, per WiTricity's anticipated appeal of the PTAB's decision to the United States Court of Appeals for the Federal Circuit.[16] On May 8, 2023, as expected, WiTricity filed a Notice of Appeal with the Federal Circuit regarding the PTAB's decision on the '734 Patent.[17] Those appellate proceedings remain pending, and the District of Delaware proceedings remain stayed.[18]

Meanwhile, on March 21, 2023—one week after the stay in the District of Delaware action was continued pursuant to the parties' agreement—WiTricity initiated the present case in the Eastern District of Pennsylvania, alleging the infringement of four different (but

---

[12] Order, Sept. 27, 2021, *WiTricity I*, No. 20-1671 (D. Del.) [Doc. No. 32]; Def.'s Mot. Stay, *WiTricity I*, No. 20-1671 (D. Del.) [Doc. No. 23].

[13] Notices of IPR Decisions, *WiTricity I*, No. 20-1671 (D. Del.) [Doc. Nos. 33–34, 36, 40] (relating to '935, '581, '635, and '955 Patents). The initiation of proceedings by the PTAB requires a determination that the petitioner is reasonably likely to prevail in its challenge. 35 U.S.C. § 314(a).

[14] Stipulation and Order, Feb. 15, 2022, *WiTricity I*, No. 20-1671 (D. Del.) [Doc. No. 52].

[15] *See* Joint Status Report, Mar. 13, 2023, *WiTricity I*, No. 20-1671 (D. Del.) [Doc. No. 83] (notifying the court that the PTAB issued a final written decision finding the '734 Patent unpatentable).

[16] Order, Mar. 14, 2023, *WiTricity I*, No. 20-1671 (D. Del.) [Doc. No. 84].

[17] Notice of Appeal, May 8, 2023, *InductEV Inc. v. Mass. Inst. of Tech.*, No. IPR2021-01165 (P.T.A.B.).

[18] Docket, *WiTricity Corp. v. InductEV Inc.*, No. 23-1916 (Fed. Cir.); Docket, *WiTricity I*, No. 20-1671 (D. Del.).

technologically related) patents. The patents raised in this case were issued by the United States Patent and Trademark Office ("PTO") from June 13, 2013 to July 17, 2018, as follows:

- On June 11, 2013, the PTO issued U.S. Patent No. 8,461,719 (the '719 Patent), titled "Wireless Energy Transfer Systems." WiTricity is the owner by assignment.

- On June 18, 2013, the PTO issued U.S. Patent No. 8,466,654 (the '654 Patent), titled "Wireless High Power Transfer Under Regulatory Constraints." Qualcomm Inc. was the original owner by assignment. On February 18, 2019, Qualcomm assigned its full right, title, and interest in and to the '654 Patent to WiTricity.

- On December 16, 2014, the PTO issued U.S. Patent No. 8,912,687 (the '687 Patent), titled "Secure Wireless Energy Transfer For Vehicle Applications." WiTricity is the owner by assignment.

- On July 17, 2018, the PTO issued U.S. Patent No. 10,027,184 (the '184 Patent), titled "Foreign Object Detection In Wireless Energy Transfer Systems." WiTricity is the owner by assignment.

(collectively, the "patents-in-suit").[19]

On March 27, 2023, InductEV filed a notice informing this Court about the Delaware case and requesting reassignment to Judge Goldberg in this District (not Delaware) pursuant to Local Rule 40.1(b).[20] WiTricity filed a response in opposition to reassignment.[21] At that time, this Court declined to deem the instant action related to the District of Delaware case, noting that "the Delaware Action concerns different patents, property, and issues of validity and infringement."[22] This Court observed at that preliminary stage that "[n]ot one of these patents is involved in the Delaware Action" and "there has been very little activity in the Delaware Action since April 2022," when the case was first stayed.[23] InductEV thereafter filed a formal motion to

---

[19] Compl. ¶¶ 4, 8–11 [Doc. No. 1].

[20] Def.'s Notice of Related Case, Mar. 27, 2023 [Doc. No. 4].

[21] Pl.'s Resp. to Def.'s Notice of Related Case, Apr. 3, 2023 [Doc. No. 5].

[22] Order, Apr. 4, 2023 [Doc. No. 6].

[23] *Id.*

transfer this case to the District of Delaware, which is now ripe for adjudication.[24] Upon careful consideration of InductEV's motion and the parties' briefings, the Court has reassessed its prior determination and will exercise its discretion to transfer the case.

## II. LEGAL STANDARD

Section 1400 of Title 28 of the United States Code, known as the patent venue statute, provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."[25] The Supreme Court has held that, for purposes of the patent venue statute, "a domestic corporation 'resides' only in its State of incorporation. . . ."[26] Venue may also be established in patent cases under § 1400(b) in the judicial district where a defendant commits acts of infringement and has a regular and established place of business. A corporate defendant has a regular and established place of business in a district if it "does its business in that district through a permanent and continuous presence there . . . ."[27]

Section 1404(a) provides that "a district court may transfer any civil action to any other district or division where it might have been brought," taking into consideration "the convenience of parties and witnesses" and "the interest of justice . . . ."[28] Where a motion to transfer is filed pursuant to § 1404(a), the moving party bears the burden of establishing that the alternative venue better serves the interests of justice and is more convenient, because courts do

---

[24] Def.'s Mot. Transfer [Doc. No. 12]; Pl.'s Resp. Opp'n Mot. Transfer [Doc. No. 24]; Def.'s Reply Supp. Mot. Transfer [Doc. No. 26]; Pl.'s Sur-Reply Opp'n Mot. Transfer [Doc. No. 29].

[25] 28 U.S.C. § 1400(b).

[26] *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 262 (2017).

[27] *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).

[28] 28 U.S.C. § 1404(a).

not lightly disturb a plaintiff's choice.[29] A district court's ruling on a motion to transfer pursuant to § 1404(a) in a patent case is governed by the law of the regional circuit.[30]

In addition to transfers of venue pursuant to § 1404(a), courts must consider the "general rule" that "favors the forum of the first-filed action" unless there is "sound reason that would make it unjust or inefficient to continue the first-filed action."[31] "The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank."[32] The rule "gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court."[33]

### III. DISCUSSION

#### A. Transfer Is Appropriate under the First-Filed Rule

InductEV contends that the Court should exercise its discretion, pursuant to the first-filed rule, to transfer this case to the District of Delaware. Generally, "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it."[34] The first-filed rule is a flexible standard motivated by equitable principles and practical considerations.[35] The Third Circuit has recognized the following exceptions to the rule: (1) rare or extraordinary circumstances; (2) inequitable conduct; (3) bad faith; (4) forum shopping;

---

[29] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted).

[30] *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1331 (Fed. Cir. 2011); *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222–23 (Fed. Cir. 2011) (citation omitted).

[31] *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937–38 (Fed. Cir. 1993), *overruled on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

[32] *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988).

[33] *Id.* (citing *Triangle Conduit & Cable Co. v. Nat'l Elec. Prods. Corp.*, 125 F.2d 1008, 1009 (3d Cir. 1942)).

[34] *E.E.O.C.*, 850 F.2d at 971 (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)).

[35] *E.E.O.C.*, 850 F.2d at 976–77.

(5) the later-filed action has developed further than the first-filed action; and (6) the first-filer instituted suit in anticipation of the opposing party's imminent suit in a less-favorable forum.[36]

Here, venue is by all indications proper in both districts. InductEV is incorporated in Delaware, therefore it can be sued for patent infringement there.[37] Venue is also proper in the Eastern District of Pennsylvania, as InductEV's principal place of business is King of Prussia, Pennsylvania, meaning it has a "regular and established place of business" in this District, and it is alleged to have committed acts of infringement here.[38]

The remaining questions, then, are (1) whether the District of Delaware is the more appropriate venue because that is where the case can be said to have been filed first, and (2) if so, whether an exception warrants a departure from the rule. The parties note that there is a split among district courts in this Circuit regarding the level of similarity required between cases for the first-filed rule to apply. Some district court decisions have held that there is a mirror-image requirement, *i.e.*, that the two cases must be identical.[39] Others have held that slight differences in claims or parties do not necessarily preclude application of the first-filed rule, so long as there is a substantial overlap between them, and the core facts and issues are sufficiently similar.[40]

---

[36] *Baird v. Meyers, Roman, Friedberg & Lewis, Co.*, No. 23-1974, 2023 WL 7098821, at *8–9 (E.D. Pa. Oct. 27, 2023) (citing *E.E.O.C.*, 850 F.2d at 972, 976).

[37] *TC Heartland*, 581 U.S. at 262. WiTricity contends that InductEV "has not established that it is incorporated in Delaware" therefore its motion to transfer necessarily fails. Pl.'s Resp. Opp'n Mot. Transfer at 6 [Doc. No. 24]. However, InductEV's state of incorporation is a matter of public record. *See* Entity Search, Del. Dep't of State: Division of Corporations, https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (search for "InductEV" confirming incorporation in Delaware on September 17, 2009).

[38] 28 U.S.C. § 1400(b); *see also* InductEV, https://www.inductev.com/contact [https://perma.cc/Q27K-MQZP] (last accessed Mar. 25, 2024) (listing corporate address in King of Prussia, PA).

[39] *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 456 (E.D. Pa. 2013) (citing cases).

[40] *Id.* at 456–57 (citing cases).

The Court is persuaded that the flexible interpretation is most consistent with the spirit and foundation of the first-filed rule. Indeed, "[t]o hold otherwise would ignore the rationale for the rule—comity and efficient judicial administration."[41] The Court is further persuaded that the core similarities between this case and *WiTricity I* support the presumptive application of the first-filed rule. Although the Delaware action involves nominally different patents, the allegedly infringing technology in both cases is cut from the same cloth.[42] Principles of comity and efficient judicial administration support a transfer so all patent claims by this plaintiff against this defendant about these wireless charging products can be considered together.

Furthermore, none of the recognized exceptions to the first-filed rule clearly apply in this case. The "application of the rule is the norm,"[43] and the "exceptions to the rule are rare . . . ."[44] The identified exceptions are largely aimed toward, *e.g.*, preventing would-be defendants from rushing to file preemptive lawsuits in more favorable fora, because courts generally (and for good reason) seek to respect a plaintiff's true choice of forum and to deter bad-faith actors. Here, however, WiTricity is the plaintiff in both actions. Although InductEV accuses WiTricity of

---

[41] *Id.* at 456.

[42] WiTricity asserts that the patents here "are each directed to unique subject matter, and each have unique claim elements that are not present in the other suit." Pl.'s Resp. Opp'n Mot. Transfer at 5 [Doc. No. 24]. Even if that is true, the express language of the patents reveals far greater similarities than differences. The two patents remaining in the Delaware action relate to wireless non-radiative energy transfer between two resonators mediated through coupling of their resonant-field evanescent tails ('734 Patent) and wireless power transfer that includes a layer of non-lossy material around the source resonator to form a keep-out zone ('595 Patent); the patents challenged in this action also involve optimizing wireless non-radiative energy transfer between two electromagnetic resonators, with certain modifications to essentially the same underlying system—specifically, the alignment of transmitting and receiving antennae ('654 Patent), the incorporation of foreign object debris detection ('184 Patent), the inclusion of an authorization facility to confirm compatibility of resonators ('687 Patent), and, particularly illustrative here, the imposition of a single constraint: a system where the square root of the product of both resonators' Q factors are greater than 100 ('719 Patent). *Compare* Compl., *WiTricity I*, No. 20-1671 (D. Del.) [Doc. No. 1] *and* Compl., Exs. 1–7, *WiTricity I*, No. 20-1671 (D. Del.) [Doc. No. 1-1] *with* Compl. [Doc. No. 1] *and* Compl., Exs. 1–4 [Doc. Nos. 1-3, 1-4, 1-5, 1-6].

[43] *Law Sch. Admissions Council v. Tatro*, 153 F. Supp. 3d 714, 723 (E.D. Pa. 2015).

[44] *E.E.O.C.*, 850 F.2d at 976.

"blatant forum shopping" and attempting "to avoid litigating in the District of Delaware, where it has been unsuccessful,"[45] WiTricity's motives are not particularly relevant to whether the first-filed rule applies. The forum shopping exception to the rule is concerned with deterring parties who, by rushing to file first, frustrate an *opponent* from litigating in a forum of their choice. There are no indications that InductEV, the party seeking transfer, engaged in inequitable conduct, acted in bad faith, or filed an anticipatory suit. Accordingly, the transfer of this case to the District of Delaware is appropriate pursuant to the first-filed rule.

### B. Transfer Is Appropriate under § 1404(a)

In the alternative, InductEV contends that the Court should exercise its discretion under § 1404(a) to transfer this case to the District of Delaware. The Court agrees that § 1404(a) provides another persuasive basis for transferring this case.

When considering whether to grant a motion to transfer pursuant to § 1404(a), courts in the Third Circuit apply the private and public interests defined in *Jumara v. State Farm Insurance Company*.[46] The relevant private interests are "the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties; the convenience of the expected witnesses; and the location of the books and records."[47] The relevant public interests are "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at

---

[45] Def.'s Mem. Supp. Mot. Transfer at 1 [Doc. No. 13].

[46] 55 F.3d 873 (3d Cir. 1995).

[47] *MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 224 (D. Del. 2017) (quoting *Blackbird Tech LLC v. TuffStuff Fitness, Int'l*, No. 16-733, 2017 WL 1536394, at *2 (D. Del. Apr. 27, 2017)).

home; [and] the public policies of the fora."[48] As previously stated, the burden on a motion to transfer under § 1404(a) lies with the movant.[49]

1. Private Interest Factors

    a. *WiTricity's Forum of Preference*

Courts should not lightly disturb a plaintiff's choice of venue.[50] However, as InductEV correctly raises, "deference given to the plaintiff's choice is reduced when the chosen venue is not the plaintiff's home forum."[51] WiTricity responds that it could not have filed this case in Massachusetts, its home forum, because the venue analysis in patent cases is centered on a *defendant*'s residence and business activities. That response, although true, does not adequately explain why WiTricity chose to sue InductEV in Delaware first (where both parties are incorporated). Because WiTricity is the plaintiff in both cases, its "forum preference as manifested in the original choice" most strongly points toward the District of Delaware, not this District.[52] This factor weighs in favor of transfer.

    b. *InductEV's Forum of Preference*

InductEV has expressed a preference to litigate this case in the District of Delaware. Either jurisdiction would be appropriate given that both parties are incorporated in Delaware.

---

[48] *MEC Res., LLC*, 269 F. Supp. 3d at 224 (quoting *Blackbird Tech LLC*, 2017 WL 1536394 at *2).

[49] *Jumara*, 55 F.3d at 879 (citations omitted).

[50] *Id.* (citations omitted); *see also Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 632 (3d Cir. 1989) ("[T]he plaintiff's choice of forum should rarely be disturbed, unless the balance of factors is strongly in favor of the defendant." (quoting *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988))).

[51] *MEC Res., LLC*, 269 F. Supp. 3d at 224 (citation omitted).

[52] *Jumara*, 55 F.3d at 879 (citations omitted); *accord Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 (7th Cir. 2010).

However, as further discussed below, InductEV cannot fairly be said to face prejudice by being brought to suit in its home district. This factor weighs in favor of transfer, but only slightly so.

### c. *Whether the Claims Arose Elsewhere*

InductEV contends that the present claims arose "as much in Delaware as in Pennsylvania" because "both parties are residents of Delaware . . . ."[53] WiTricity responds that the claims can most fairly be said to have arisen in Pennsylvania, where InductEV is located and has engaged in research and development for its allegedly infringing products. The Court is not persuaded that the mere fact that InductEV is incorporated in Delaware outweighs the practical reality that InductEV's operations—including its research and development arm—are physically based out of its offices in King of Prussia. This factor weighs against transfer.

### d. *Convenience of the Parties, Convenience of the Witnesses, and Location of Books and Records*

The convenience-of-the-parties factor is viewed through the lens of "relative physical and financial condition . . . ."[54] Because the present litigation involves two sophisticated and well-resourced corporate entities, the Court holds that this general party-convenience factor is neutral. As to the convenience of witnesses, the Court credits InductEV's point that Wilmington and Philadelphia are geographically close enough that party and non-party witnesses could be summoned to testify in one or the other without much difference in logistical demands. As the Third Circuit explained in *Jumara*, the convenience of the witnesses is taken into account "only

---

[53] Def.'s Mem. Supp. Mot. Transfer at 12 [Doc. No. 13].

[54] *Jumara*, 55 F.3d at 879 (citation omitted).

to the extent that the witnesses may actually be unavailable for trial in one of the fora . . . ."[55] This factor is also neutral.

With respect to books and records, the Court agrees with InductEV that, as a general matter, modern developments in electronic discovery practices are such that records are likely to be readily available for production in either district. However, WiTricity notes that "patent infringement cases also frequently involve the production of product samples and inspections of infringing devices—something that cannot simply be digitized and sent over email."[56] Given the nature of the allegedly infringing products at issue in this case, and considering that InductEV's facilities are located in Pennsylvania (along with, presumably, some quantity of its research equipment and product inventory), this factor weighs against transfer.

    2. <u>Public Interest Factors</u>

        a. *Enforceability of the Judgment*

InductEV asserts that judgments issued in this District and judgments issued in the District of Delaware would be equally enforceable. WiTricity does not address enforceability. The Court holds that this factor is neutral.

        b. *Practical Considerations for Trial*

InductEV contends that, if the case is transferred, the district court in Delaware would be "well-positioned to set a consolidated schedule for carrying out discovery and other matters . . . ."[57] InductEV further asserts that "[i]t makes little sense for discovery to proceed in two different forums on different schedules about the same underlying issue of whether InductEV's

---

[55] *Id.*

[56] Pl.'s Resp. Opp'n Mot. Transfer at 8 [Doc. No. 24].

[57] Def.'s Mem. Supp. Mot. Transfer at 13 [Doc. No. 13] (quoting *Transcore, L.P. v. Mark IV Indus. Corp.*, No. 09-2789, 2009 WL 3365870, at *7 (E.D. Pa. Oct. 15, 2009)).

wireless charging installations infringe WiTricity's patents."[58] WiTricity responds that, even if this case were to be transferred to Delaware, no one knows when such discovery would take place, which undercuts the notion that a transfer would lead to immediate efficiency gains.[59]

The Court appreciates WiTricity's concerns that the Delaware proceedings have now been stayed for nearly two years—a consideration which factored into this Court's initial decision not to deem this case related to *WiTricity I*. However, upon careful review of the record, it appears inevitable that the pending decision from the Federal Circuit will have important implications (if not binding guidance) regarding the patents at issue in both this case and *WiTricity I*.[60] The PTAB decision being appealed found that 40 challenged claims in Patent '734 were proven, by a preponderance of the evidence, to be unpatentable for obviousness.[61] All of those claims involved "oscillatory resonant electromagnetic modes for wireless non-radiative energy transfer," subject to varying parameters and system specifications.[62] In other words, the ongoing proceedings before the Federal Circuit relate to subject matter directly relevant to the present patents-in-suit, with oral argument likely to be scheduled soon.[63]

Even if this Court were to deny transfer, there would be persuasive grounds to stay these proceedings pending the Federal Circuit's decision (just as the court ordered in Delaware). Therefore, the Court agrees with InductEV that consolidation of discovery efforts across each of

---

[58] Def.'s Mem. Supp. Mot. Transfer at 13 [Doc. No. 13].

[59] *See* Pl.'s Sur-Reply Opp'n Mot. Transfer at 3 [Doc. No. 29] ("The timing and scope of the Delaware case, should it ever resume, is unknown at this point.").

[60] *See WiTricity Corp. v. InductEV Inc.*, No. 23-1916 (Fed. Cir.); *Ex parte InductEV Inc.*, No. 2021-01165, 2023 WL 2607675 (P.T.A.B. Mar. 6, 2023).

[61] *Ex parte InductEV*, 2023 WL 2607675 at *1, *31.

[62] *Id.* at *1.

[63] *See* Docket, *WiTricity Corp. v. InductEV Inc.*, No. 23-1916 (Fed. Cir.).

these claims in a single federal district would be most practical and would best avoid the risk of inconsistent judgments. Those potential benefits are not significantly undermined by the current stay of the Delaware proceedings pending appeal, given the relevance of the Federal Circuit's pending decision to both cases.

Finally, the Court is persuaded that the Delaware court now has, to a certain extent, unique subject-matter expertise into the patented technology such that a transfer would be in the best interest of judicial efficiency. The weight of that subject-matter expertise is perhaps not as great as it would be if *WiTricity I* had reached a further point in the proceedings before it was stayed.[64] Nevertheless, as InductEV notes, the Delaware court's ruling was a detailed, 29-page reported memorandum opinion, which held that all challenged claims of a technologically similar WiTricity patent were ineligible for patent protection under 35 U.S.C. § 101.[65] On balance, this factor weighs in favor of transfer.

        c. *Relative Administrative Difficulty in the Two Fora Resulting from Court Congestion*

The issue of court congestion pales in importance under these facts. *WiTricity I* has been stayed for approximately 23 months. As it currently stands, this factor is neutral.

---

[64] *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1346, 1344 (Fed. Cir. 2010) (noting that trial court had become "very familiar with the only asserted patent and the related technology," "had substantial experience with the patent-in-suit based on prior litigation involving the plaintiff," and was overseeing "a second, co-pending case . . . between the plaintiff and another defendant involving the same patent-in-suit, pertaining to the same underlying technology, and involving similar accused services"). The Delaware court scheduled a *Markman* hearing for November 9, 2022. Order, Mar. 8, 2022, *WiTricity I*, No. 20-1671 (D. Del.) [Doc. No. 57]. Because the case was then stayed, it does not appear that the hearing was ever held.

[65] Def.'s Reply Supp. Mot. Transfer at 1 [Doc. No. 26] (citing *WiTricity I*, 563 F. Supp. 3d 309, 315–26 (D. Del. 2021)). *Cf.* Pl.'s Resp. Opp'n Mot. Transfer at 1 [Doc. No. 24] (characterizing the Delaware court as having "addressed only a single issue of claim construction that concerned a patent that was dismissed").

d. *Local Interest in Deciding Local Controversies*

InductEV asserts that "there is no greater local interest in resolving this controversy in Pennsylvania than in Delaware . . . ."[66] WiTricity responds that "this District has a substantial interest in the outcome of this litigation as InductEV's headquarters is here and it employs approximately 80 people."[67] It is true that the outcome of this litigation may have an impact on the local economy. However, patent infringement cases are not ordinarily considered local controversies. They are governed by federal law and decided by federal courts of national stature. The allegedly infringing technology at issue here is, according to WiTricity's own Complaint, installed in many states throughout the country. On balance, this factor is neutral.

e. *Public Policies of the Fora*

The Court is not aware of any strong public policies creating a preference for the District of Delaware over the Eastern District of Pennsylvania in adjudicating this patent infringement suit. This factor is neutral.

3. Conclusion as to § 1404(a)

InductEV has the burden of persuading the Court that a transfer pursuant to § 1404(a) is warranted. Upon careful consideration of the *Jumara* factors, the Court holds that InductEV has met its burden. Three factors (WiTricity's original preference; InductEV's preference; practical considerations) weigh in favor of transfer. Two factors (whether the claims arose elsewhere; the location of books and records) weigh against transfer. The Court concludes that the relevant factors under § 1404(a) support a transfer of the case.

---

[66] Def.'s Mem. Supp. Mot. Transfer at 13 [Doc. No. 13].

[67] Pl.'s Resp. Opp'n Mot. Transfer at 9 [Doc. No. 24] (citing InductEV LinkedIn Profile, https://www.linkedin.com/company/inductev-inc/insights).

## IV.  CONCLUSION

For the reasons stated above, Defendant's motion to transfer will be granted. An appropriate order follows.